Randy CERANDO, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 9, 1998.

Decided Feb. 26, 1999.

Carmen C. Marinelli, Bethlehem, for appellant.

Elaine N. Blass, Asst. Counsel, and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellee.

Before FRIEDMAN and KELLEY, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Randy Cerando (Cerando) appeals from an order of the Court of Common Pleas of Lehigh County (trial court) denying Cerando's statutory appeal from the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (DOT) suspension of his operating privilege pursuant to section 1547(b)(1) of the Vehicle Code.[1] We affirm.

On May 3, 1997, Officer Wendy Brantley was working at a DUI checkpoint. When Cerando came through the checkpoint and rolled down his window, Officer Brantley noticed the odor of alcohol on Cerando's breath.[2] In response to the officer's questions, Cerando admitted that he had "maybe one or two beers." (R.R. at 28.) Officer Brantley then asked Cerando to perform two field sobriety tests, which yielded mixed results. The officer also asked Cerando to take a preliminary breath test; however, in two attempts at this test, Cerando failed to provide a sufficient breath sample. (Trial court op. at 2–3.)

Officer Brantley then took Cerando to a mobile unit for an Intoxilyzer test. Officer Brian Lewis, a certified Intoxilyzer 5000 operator, read Cerando the requisite chemical test warnings and administered the test. (R.R. at 2.) When Cerando failed to provide a sufficient breath sample in several attempts, Officer Lewis deemed that Cerando refused to submit to chemical testing. (Trial court op. at 3.)

By letter dated May 16, 1997, DOT suspended Cerando's operating privilege for one year because of the May 3, 1997 refusal. (R.R. at 3–4.) On June 5, 1997, Cerando appealed to the trial court, which scheduled a hearing on the matter. (R.R. at 5–9.) In preparing for the hearing, Cerando subpoenaed the Allentown Police Department for a copy of the video tape taken of the May 3, 1997 Intoxilyzer test. (R.R. at 10.)

Michael P. Combs, Captain of Police for the Allentown Police Department, responded to Cerando's subpoena with a letter dated July 22, 1997. In that letter, Captain Combs stated:

> I am in receipt of your subpoena requesting a copy of the video tape that was taken on May 2 and May 3, 1997 at the DUI checkpoint in the 2000 Block of Hamilton Boulevard. I have been informed that the video camera that was used at that checkpoint was malfunctioning and the tape that was made is unusable. The officers at the checkpoint were unaware of the camera malfunction and it was not discovered until they went to copy the 8mm video camera tape on to a full size VHS tape. A new video camera has been purchased but I have been informed by our technical people that the tape could not be salvaged.

(R.R. at 11.)

In August 1997, Cerando filed a motion to dismiss the suspension of his operating privilege based on the doctrine of spoliation. In the memorandum of law that accompanied the motion, Cerando explained that the spoliation doctrine arises out of product liability cases and that the doctrine is applied where the allegedly defective product is no longer available for inspection as a result of the plaintiff's conduct. Without the product, there is no evidence to establish the identity of the product, the nature of the defect or the causal connection between the product and the plaintiff's injury. *See DeWeese v. Anchor Hocking Consumer and Industrial Products Group*, 427 Pa.Super. 47, 628 A.2d 421 (1993); *Roselli v. General Electric Co.*, 410 Pa.Super. 223, 599 A.2d 685 (1991), *appeal granted*, 530

---

1. Section 1547(b)(1) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1), states that DOT shall suspend the operating privilege of a person for 12 months if that person is placed under arrest for driving under the influence of alcohol and refuses to submit to chemical testing when asked to do so.

2. The trial court stated that Officer Brian Lewis noticed the odor of alcohol on Cerando's breath. (Trial court op. at 2.) However, the record indicates that Officer Brantley did so. (R.R. at 28.)

Pa. 645, 607 A.2d 255 (1992), *appeal discontinued*, (January 11, 1993). Cerando asked the trial court to apply the doctrine of spoliation in this case because DOT failed to preserve the video tape, the only exculpatory evidence available to him. (R.R. at 12–19.) After a hearing, the trial court denied Cerando's motion to dismiss and his statutory appeal.

The sole issue before us is whether the trial court erred when it refused to grant Cerando's motion to dismiss DOT's suspension of his operating privilege based on the spoliation doctrine.[3] We hold that the spoliation doctrine does not apply here.

The spoliation doctrine essentially applies only in product liability cases where the plaintiff destroys an allegedly defective product that the plaintiff claims caused an injury. That situation is not present in this case.[4]

Moreover, contrary to Cerando's claim, the video tape was not the only potentially exculpatory evidence available to Cerando. For example, Cerando could have presented the Intoxilyzer printouts; Cerando could have challenged the certification of the Intoxilyzer operator; and Cerando could have questioned the certifications of the Intoxilyzer itself.[5] However, Cerando failed to do so.

Accordingly, we affirm.

### ORDER

AND NOW, this 26th day of February, 1999, the order of the Court of Common Pleas of Lehigh County, dated March 9, 1998, is affirmed.

Judge KELLEY dissents.

---

**3.** Our scope of review is limited to determining whether the trial court's findings of fact are supported by substantial evidence, whether the trial court made an error of law or whether the trial court committed an abuse of discretion. *Koller v. Department of Transportation, Bureau of Driver Licensing*, 682 A.2d 82 (Pa.Cmwlth.1996).

**4.** Neither party here has alleged that a defect in the video tape caused harm to anyone. Also, DOT has not destroyed the video tape; indeed, the video tape was in the custody and control of the police department. (*See* R.R. at 53.)

**5.** DOT regulations require that breath test equipment undergo simulator tests and periodic accuracy and calibration tests. 67 Pa.Code §§ 77.24–77.26. DOT regulations also require the issuance of a certificate of accuracy and a certificate of calibration upon satisfactory completion of the accuracy and calibration tests. 67 Pa.Code §§ 77.25(c) and 77.26(d).