# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert Fennell, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1827 C.D. 2015 |
| | : | Submitted: February 5, 2016 |
| Pennsylvania Department of | : | |
| Corrections, | : | |
| Respondent | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: March 29, 2016**

Robert Fennell (Requester), an inmate housed in the State Correctional Institution at Smithfield, petitions for review from the Office of Open Records' (OOR) final determination that upheld the Department of Corrections' (DOC) denial of access to records sought under the Right-to-Know Law (RTKL).[1]  Requester sought records, including training manuals, regarding physical restraint of inmates and report writing.  OOR upheld DOC's denial of the request based on the public safety exception in Section 708(b)(2) of the RTKL, 65 P.S. §67.708(b)(2). Requester argues the manuals are public because they fix the personal or property rights of inmates.  Upon review, we affirm.

## I. Background

Requester submitted a request for the following:

_____

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

1. The training academies manual, worksheet, guide and diagrams on how to handcuff an inmate and how to fill out and file a misbehavior report ([under] DC-141) on an inmate; (Training Materials) and[,]

2. Documents showing the attendance of [Correction Officer] Bollinger from Jan. 29, 2009 to Feb. 2, 2009.

Certified Record (C.R.) at Ex. 1 (Request).

DOC denied the Request as to the Training Materials sought in Item 1 based on the public safety exception in Section 708(b)(2) of the RTKL, 65 P.S. §67.708(b)(2), and the personal security exception in Section 708(b)(1)(ii), 65 P.S. §708(b)(1)(ii) (collectively, the security exceptions). DOC disclosed the attendance records. Requester appealed the denial to OOR.

On appeal to OOR, DOC submitted an affidavit of Major Victor Mirarchi (Mirarchi), its Chief of Security (Affidavit) to support its exceptions. Mirarchi oversees security aspects of DOC including "review [of] all policies, procedures and training as they relate to security." C.R., Item No. 3, Ex. A (Affidavit at ¶2). He explained the Training Materials relate to inmate restraint (Restraint Manuals) and investigating and writing reports (Report Writing Manuals).

In general, the Training Materials relate to DOC's law enforcement functions. Mirarchi cautioned that their disclosure may allow inmates to circumvent correction officer training. Specifically, as to the Restraint Manuals, he attested disclosure of information regarding how staff use restraints would place staff and inmates at "greater risk of harm," and may allow an inmate to assert a "successful

2

defense." Id. (Affidavit at ¶25). As to the Report Writing Manuals, he attested they contain investigative techniques that would allow inmates to obstruct reporting. Further, their disclosure may allow inmates to challenge "a misconduct report not precisely following the Training Materials." Id. (Affidavit at ¶29). As a result, "disorderly inmates [would be placed] back into the general population to further disrupt the safety and security of the institution." Id. (Affidavit at ¶30).

Ultimately, OOR issued a final determination, upholding DOC's denial as to the Training Materials. See Fennell v. Dep't of Corr., OOR Dkt. No. AP 2015-1518 (issued September 8, 2015) (Final Determination). It dismissed the appeal as moot as to the attendance records. Id. Regarding the public safety exception, OOR found the Affidavit contained sufficient detail to establish public safety would be reasonably likely to be jeopardized if the Training Materials were disclosed.

Requester filed a petition for review.

**II. Discussion**

On appeal,[2] Requester argues he has a right to the records as a citizen. He asserts the Training Materials "are merely management tools which establishes [sic] standards of behavior for employees ...." Pet'r's Br. at 8. He contends DOC's argument that the Report Writing Manuals are protected so an inmate may not easily appeal "misconducts by proving that the officers violated [DOC] regulations and his due process" is not a proper basis for protection. Id.

_____

[2] In a RTKL appeal involving a Commonwealth agency, this Court has the discretion to rely upon the record created below or to create its own. Dep't of Labor & Indus. v. Heltzel, 90 A.3d 823 (Pa. Cmwlth. 2014) (en banc).

3

Under the RTKL, records in the possession of an agency are presumed public unless they are: (1) exempt under Section 708(b) of the RTKL; (2) protected by privilege; or (3) exempt "under any other Federal or state law or regulation or judicial order or decree." Section 305 of the RTKL, 65 P.S. §67.305. DOC bears the burden of proving its asserted exceptions by a preponderance of the evidence. Section 708(a) of the RTKL, 65 P.S. §67.708(a); Carey v. Dep't of Corr., 61 A.3d 367, 374 (Pa. Cmwlth. 2013). A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to "a more likely than not" inquiry. Carey, 61 A.3d at 374 (quoting Delaware Cnty. v. Schaefer ex rel. Phila. Inquirer, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012) (en banc)).

To establish the public safety exception, DOC must prove by a preponderance of the evidence that the disclosure of the records "would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity ...." 65 P.S. §67.708(b)(2); Carey, 61 A.3d at 374; Adams v. Pa. State Police, 51 A.3d 322 (Pa. Cmwlth. 2012). We apply a two-pronged test: (1) the record at issue must relate to a law enforcement or public safety activity; and, (2) disclosure of the record would be "reasonably likely" to threaten public safety or a public protection activity. Id.

Here, DOC submitted sufficient evidence in the form of the Affidavit to show that the Training Materials relate to a law enforcement activity. Mirarchi attested corrections officers use the materials in performing their duties. C.R., Item No. 3, Ex. A (Affidavit at ¶8).

4

As to the reasonable likelihood component, we consider whether an agency submitted sufficient evidence showing a likelihood that disclosure would cause the alleged harm. <u>Carey</u>. More than a potential safety risk is required to meet this exception. <u>Pa. State Police v. McGill</u>, 83 A.3d 476 (Pa. Cmwlth. 2014) (<u>en</u> <u>banc</u>) (rejecting argument that disclosure of number of officers assigned to a municipality threatens public safety by revealing potentially vulnerable areas).

This Court's decisions support protection of manuals and training materials under the public safety exception when the agency shows a nexus between the disclosure of the information at issue and the alleged harm. <u>See</u>, <u>e.g.</u>, <u>Adams</u> (protecting police policy regarding confidential informants); <u>Woods v. Office of Open Records</u>, 998 A.2d 665, 668 (Pa. Cmwlth. 2010) (protecting the "Supervision Strategies" part of a sex offender supervision manual); <u>Reeves v. Pa. Bd. of Prob. & Parole</u> (Pa. Cmwlth., No. 819 C.D 2014, filed June 5, 2015) (unreported) (protecting manual agency used to monitor parolee's change of address); <u>but</u> <u>see</u> <u>Harrisburg Area Cmty. Coll. v. Office of Open Records</u> (Pa. Cmwlth., No. 2110 C.D. 2009, filed May 17, 2011) (unreported) (<u>en</u> <u>banc</u>) (<u>HACC</u>) (holding affidavit regarding police manuals for DUI training insufficient as to connection between need for confidentiality and the potential harm). Generally, whether an agency establishes this exception depends on the level of detail in the supporting affidavit. <u>Carey</u>.

In <u>Adams</u>, this Court reasoned the Pennsylvania State Police met its burden of proving the manuals regarding use of confidential informants warranted protection because the affidavit contained sufficient detail. Specifically, the affiant

5

stated: "If this information is placed into the public domain, it would prevent confidential informants from coming forward and substantially alter our criminal investigative process. Confidential informants are irreplaceable in many of our current intelligence investigations …." Adams, 51 A.3d at 324.

Similarly, in Woods, the Board of Probation and Parole disclosed redacted policies regarding monitoring of sex offenders to an inmate, removing the "Supervision Strategies" for public safety reasons. Id. at 666. The essential factor in our decision was the level of detail the director of the agency provided regarding the ways in which a sex offender might use the redacted information to evade or avoid detection.

By contrast, in HACC, we concluded the affidavit submitted did not contain sufficient detail to establish the public safety exception. The requester sought training curricula used to teach police officers about making DUI arrests. HACC submitted an affidavit in which its affiant stated, "[b]ased upon my professional experience and judgment [as director of Municipal Police Officer Education and Training Commission], a disclosure of the Commission's DUI curriculum in response to this RTKL request would be reasonably likely to jeopardize or threaten the Commission's statutorily-mandated public protection activity." HACC, slip op. at 14. This Court found the affidavit conclusory.[3] See Office of the Governor v. Scolforo, 65 A.3d 1095 (Pa. Cmwlth. 2013) (en banc).

[3] We remanded to OOR to create a more complete record because it was not clear, under the "freshly minted law" that the agency could have requested a hearing or *in camera* review to substantiate its exception. HACC v. Office of Open Records (Pa. Cmwlth., No. 2110 C.D. 2009, filed May 17, 2011) (unreported) (en banc), slip op. at 14. Here, there is no indication DOC asked to supplement the record beyond the Affidavit.

With these standards in mind, we review the Affidavit.

DOC amply supported that the public safety exception protects the Restraint Manuals. C.R., Item No. 3, Ex. A (Affidavit at ¶15-25). The Affidavit is specific as to the potential for harm to public safety should DOC be required to disclose its methods for restraining inmates. Mirarchi attests to the connection between the information at issue regarding restraint techniques, and the danger to staff and inmates should inmates have the playbook to defend against restraints. Id. at ¶¶20-25. We are persuaded that information contained in the Restraint Manuals could be manipulated by inmates in their interaction with corrections officers "to reduce [the restraints'] effectiveness." Id. at ¶22.

As to the Report Writing Manuals, DOC established their investigative content warrants protection for similar reasons. Significantly, Mirarchi attested the Report Writing Manuals "reveal investigative techniques for conducting investigations." Id. at ¶28. Knowledge of such techniques may allow for inmate manipulation and counteraction. Woods; Carey v. Dep't of Corr. (Pa. Cmwlth., No. 1348 C.D. 2012, filed July 3, 2013) (unreported).

As to the non-investigative content, the Affidavit stated inmates could "disrupt the disciplinary process due to a misconduct report not precisely following the [Report Writing Manuals]." Affidavit at ¶29. Specifically, Mirarchi attested: "As such, misconducts that should have been issued but for a statement inconsistent with the Training Materials will place disorderly inmates back into the general

population to further disrupt the safety and security of the institution." Id. at ¶30 (emphasis added).

Viewing the Affidavit in a light most favorable to the party prevailing before the OOR, it supports an inference that disclosure of the non-investigative portions of the Report Writing Manual will cause corrections officers to forego meritorious discipline over concerns of departure from misconduct reporting guidelines. As a consequence, reporting procedures by corrections officers, as opposed to substantive conduct of inmates, will assume greater significance, resulting in the placement of disorderly inmates into the general population.

This Court recognizes "security issues are of particular concern in a prison setting." Carey, 61 A.3d at 374. Further, "[a] prison setting involves unique concerns and security risks." Commonwealth v. Dugger, 486 A.2d 382, 384 (Pa. 1985).

DOC needed only a preponderance of the evidence to establish the public safety exception. OOR determined DOC met its burden of proof. So as not to disturb the delicate balance of power in a prison setting, id., such security concerns weigh in favor of protecting the Report Writing Manuals in their entirety. Accordingly, we defer to OOR's conclusion here.

### III. Conclusion

For all the foregoing reasons, OOR's Final Determination is affirmed.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Fennell,             :
          Petitioner      :
                                :
        v.               :     No. 1827 C.D. 2015
                                :
Pennsylvania Department of     :
Corrections,                  :
          Respondent    :

# **O R D E R**

**AND NOW**, this 29th day of March, 2016, the final determination of the Office of Open Records is **AFFIRMED**.

 

                                       _____
                                       ROBERT SIMPSON, Judge